UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-vs-  REPORT & RECOMMENDATION

JOHN RIVERA-BANCHS,  20-CR-6046-EAW-MJP-1

Defendant.

### APPEARANCES

For the United States:   Everardo Rodriguez, A.U.S.A.
United States Attorney's Office
100 State Street, Fifth Floor
Rochester, NY 14614
(585) 263-6760, ext. 2250

For the Defendant:   John Rivera-Banchs *pro se*
No. 327904
Monroe County Jail
130 South Plymouth Avenue
Rochester, NY 14614

### INTRODUCTION

**Pedersen, M.J.** This case is before the Court on the two applications filed by John Rivera-Banchs in his *pro se* capacity (hereinafter "Defendant"). (Letter Motion to Challenge Jurisdiction, Jul. 7, 2020, ECF No. 27; Motion to Challenge Jurisdiction, Jul. 13, 2020, ECF No. 31.) Both applications attack the subject matter jurisdiction of the Court and seek dismissal of the indictment. The Court has considered the two applications, the government's response, and Defendant's reply.[1] For the reasons

---

[1] Most of Defendant's reply concerns an attack on the validity of the warrant in this case. Only a portion deals with the jurisdictional issue raised in his two applications.

stated below, the undersigned recommends that the District Judge deny both applications.

## PROCEDURAL BACKGROUND

This case began with a criminal complaint filed on February 20, 2020, ECF No. 1, alleging Defendant violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, between about 2016 and 2020, by possessing, with the intent to distribute, and distributing, five kilograms or more of cocaine, a Schedule II controlled substance, and conspiring with others to do the same. On March 19, 2020, the Grand Jury indicted Defendant on one count of narcotics conspiracy, finding that from in or about January 2019, the exact date being unknown to the Grand Jury, through and including on or about February 20, 2020, in the Western District of New York, and elsewhere, the defendants, JOHN RIVERA-BANCHS and XXXX,[2] did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A). All in violation of Title 21, United States Code, Section 846. (Sealed Indictment, Mar. 19, 2020, ECF No. 9; Redacted Indictment, Mar. 26, 2020, ECF No. 11.)

On May 4, 2020, following a hearing, the Court ordered Defendant detained during the pendency of this case. (Order of Detention, May 4, 2020, ECF No. 19.) On

---

[2] The indictment has not been unsealed in relation to Defendant's co-conspirator(s).

July 1, 2020, Defendant, who at that time was well represented by assigned counsel from the Federal Public Defender's Office, formally applied to proceed *pro se*. Following a lengthy and detailed hearing, the Court found that he knowingly and intelligently waived his Sixth Amendment right to counsel and dismissed his counsel. (Minute Entry, Jul. 1, 2020, ECF No. 24.) In a subsequent Decision and Order (Jul. 10, 2020, ECF No. 28), the Court appointed standby counsel to protect the integrity and continuity of the proceedings. Part of the reason Defendant wanted to proceed *pro se* was so that he could challenge the Court's jurisdiction on what the Court finds is a misperception of the application of 18 U.S.C. § 7, which addresses the special maritime and territorial jurisdiction of the United States. In his two applications, Defendant makes several arguments which the Court summarizes[3] as follows:

    A. The indictment is invalid because it lacks original signatures of the foreman of the Grand Jury and the United States Attorney, in contradiction of Federal Rule of Criminal Procedure 7.

    B. Defendant's former counsel failed to appeal this Court's detention order.

    C. The alleged crime with which Defendant is charged did not occur on lands owned by the United States or ceded to the United States by the State of New York, therefor, the Court lacks jurisdiction over the place of the crime as shown by 40 U.S.C. § 3112(c) ("It is conclusively presumed that jurisdiction has not been accepted until

---

[3] The two *pro se* filings are lengthy and repetitive. The Court has attempted to construe the arguments raised in a broad manner because Defendant is proceeding *pro se*.

the Government accepts jurisdiction over land as provided in this section."). Consequently, 18 U.S.C. § 5 is inapplicable.[4]

D. The Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 *et seq.*, does not contain an essential element showing it applies in the special maritime and territorial jurisdiction of the United States; consequently, the Court lacks jurisdiction under that Act.[5]

E. Because the indictment is defective, it does not confer subject matter jurisdiction to the Court; therefore, Defendant is actually innocent of the charges.

F. Because "Federal courts have no common-law jurisdiction in criminal cases," *Tennessee v. Davis*, 100 U.S. 257, 282 (1880), this Court has no territorial jurisdiction over Defendant's alleged crimes.[6]

G. Until the United States has accepted jurisdiction over the land on which Defendant is accused of committed the offenses in the indictment, the Court must presume it does not have jurisdiction, citing *Adams v. United States*, 319 U.S. 312, 313 (1943).[7]

---

[4] Section 5 states: "The term 'United States,' as used in this title in a territorial sense, includes all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone."

[5] Section 841(a)(1), for example, states in pertinent part: "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance…."

[6] The full sentence from *Davis* is: "Federal courts have no common-law jurisdiction in criminal cases, nor can such courts proceed to try or punish any offender, except when authorized by an act of Congress, passed in pursuance of the Constitution." *Davis*, 100 U.S. at 282.

[7] The actual language from *Adams* is: "The Act of October 9, 1940, 40 U. S. C. § 255, passed prior to the acquisition of the land on which Camp Claiborne is located, provides that

H. A United States District Court is a legislative court and is without criminal jurisdiction, as opposed to a District Court of the United States, which is a court created under Article III of the Constitution. A United States District Court is the equivalent of a Territorial Court and therefore lacks jurisdiction unless the land on which the alleged crime was committed was ceded to the United States.[8]

I. The rule in *United States v. Lopez*, 514 U.S. 549 (1995), which invalidated the Gun-Free School Zones Act of 1990, because it exceeded Congress' authority under the Commerce Clause, U.S. Const. art. 1, sec. 8, cl. 3, should be applied to invalidate the Act under which Defendant is being prosecuted. The Comprehensive Drug Abuse Prevention and Control Act permits the U.S. Attorney to cite felony crimes under the guise of regulating interstate commerce in contradiction to Article III of the Constitution.

J. The Court and the U.S. Attorney are committing treason against the Constitution by maintaining this prosecution without jurisdiction.

---

United States agencies and authorities may accept exclusive or partial jurisdiction over lands acquired by the United States by filing a notice with the Governor of the state in which the land is located or by taking other similar appropriate action. The Act provides further: 'Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.' The government had not given notice of acceptance of jurisdiction at the time of the alleged offense." *Adams*, 319 U.S. at 313.

[8] Defendant quotes language from *Rhode Island v. Massachusetts*, 37 U.S. 657, 733 (1838): "'The place described, is unquestionably within the original territory of Massachusetts. It is, then, within the jurisdiction of Massachusetts, unless that jurisdiction has been ceded to ('by') the United States, *Ib*. 387.' 'A cession of territory is essentially a cession of jurisdiction, *Ib*. 388.' 'Still the general jurisdiction over the place, subject to this grant of power, (to the United States,) adheres to the territory as a portion of sovereignty not yet given away.' *Ib*. 389." *Id*., 37 U.S. at 733.

## ANALYSIS

The Honorable Elizabeth A. Wolford of this Court referred this case to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B). Subdivision (b)(1)(A) authorizes the undersigned to hear and determine any pretrial matter except a motion "to dismiss or quash an indictment or information made by the defendant…." Subdivision (b)(1)(B) authorizes the undersigned conduct a hearing on any motion excepted under subdivision (b)(1)(A) and submit a report and recommendation to the district judge. Accordingly, the undersigned submits this Report and Recommendation to Judge Wolford.

### *Jurisdiction (addressing Defendant's arguments C, D, E, F, G, H & J)*

A second-year law student would recognize the fallacy of Defendant's arguments regarding this Court's subject-matter jurisdiction. This Court has subject-matter and *in personam* jurisdiction over the crimes alleged as well as over the person of John Rivera-Banchs, the defendant. Therefore, the District Judge should reject Defendant's arguments and deny the two applications seeking to dismiss the indictment.

The District Court's jurisdiction in this case starts with Article III and Amendment VI of the Constitution. Article III, section 2, paragraph 3, provides:[9]

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

---

[9] The Sixth Amendment was ratified on Dec. 15, 1791. Time, Almanac 2006 at 114 (2005 Pierson Education). By then, Congress had already established the district courts in the Judiciary Act of 1789, discussed later in this Report and Recommendation.

Amendment VI provides in pertinent part:

> All prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court, or the judge thereof, upon the application of the defendant, shall order the cause to be transferred to another division of the district.

In addition, Federal Rule of Criminal Procedure 18 provides:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

As to the creation of the district courts of the United States, the Constitution authorized Congress to "ordain and establish" courts inferior to the Supreme Court, and vested in those courts the "judicial power of the United States." U.S. Const. art. III, sec. 1. Congress did so with the Judiciary Act of 1789, 1 Stat. 73, sec. 2.

"Article III gives to the federal judicial branch authority—that is, subject matter jurisdiction—over all cases arising under the laws of the United States; and by statute Congress has given the federal district courts this authority over federal criminal cases in the first instance. 18 U.S.C. § 3231 (2000)." *United States v. Gonzalez*, 311 F.3d 440, 442 (1st Cir. 2002). The First Circuit wrote further that:

> Conventionally, a federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges, as the Gonzalez indictment certainly did, that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes. *See* 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3575, at 244-45 (2d ed.1984). In such a case subject matter jurisdiction, that is to say, authority to decide all other issues presented within the framework of the case, exists.

*Id*. The statute cited, 18 U.S.C. § 3231, reads as follows:

> The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.
>
> Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

Defendant has already cited to 18 U.S.C. § 5, which states that the term "United States" used in title 18 "in a territorial sense, includes all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone." Some cases that discuss the territorial jurisdiction of the United States refer to ships seized inside the territorial waters of the United States. *See, e.g., Ford v. United States*, 273 U.S. 593 (1927) (crew on a ship 5.7 nautical miles off the coast of U.S. territorial island subject to criminal prosecution for violating U.S. law prohibiting importation of intoxicating liquor). In the case at bar, however, the territorial jurisdiction is clear: Defendant is alleged to have committed his offenses inside the territory of the Western District of New York.

The territorial argument Defendant raises here was argued by the defendant in *United States v. Phillips*, No. 08-2853, 326 F. App'x 400 (7th Cir. May 28, 2009). There the defendant, Phillips, argued that the district court lacked jurisdiction to try him for mail fraud and money laundering. Phillips reasoned that:

> district courts lack subject-matter jurisdiction over all crimes not committed on federal property. But district courts in fact have exclusive subject-matter jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231; *United States v. Turcotte,* 405 F.3d 515, 521 (7th Cir. 2005). Phillips also contends that the district court lacked personal jurisdiction over him because he is "a natural man, a Sovereign state born citizen, a private human being." This argument is frivolous: a district court has personal jurisdiction over any defendant brought before it on a federal indictment charging a violation of federal law. *See, e.g., United States v. Marks,* 530 F.3d 799, 810 (9th Cir. 2008);

> *United States v. Rendon,* 354 F.3d 1320, 1326 (11th Cir. 2003); *see also United States v. Burke,* 425 F.3d 400, 408 (7th Cir. 2005) (explaining that defendant's presence in the territory of the United States supplies personal jurisdiction).

*Id.*

As to the special maritime and territorial jurisdiction of the United States referred to in 18 U.S.C. § 7, that statute was enacted to cover crimes committed outside the geographic boundaries of the United States. *United States v. Holmes*, 670 F.3d 586, 591 n.2 (4th Cir. 2012). An example of such an offense was the subject of an appeal in the Second Circuit. In *United States v. Gatlin*, 216 F.3d 207 (2d Cir. 2000), the defendant was accused of sexually abusing a minor within the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. § 2243. The question on appeal was "whether a civilian may be prosecuted in federal court for conduct on a United States military installation overseas." *Id.* at 208. The Second Circuit held that the district court was without jurisdiction because the act took place on land leased by the military in the Federal Republic of Germany. *Id.* at 209. Congress subsequently enacted legislation "authorizing the exercise of jurisdiction by U.S. courts over members of the armed forces and accompanying civilians who commit criminal offenses outside of the United States. *See* Military Extraterritorial Jurisdiction Act of 2000, 18 U.S.C. § 3261 et seq." *In re Ski Train Fire in Kaprun, Aus.*, No. 01 MDL 1428 (SAS), 2003 U.S. Dist. LEXIS 22139, *25 n.70 (S.D.N.Y. Dec. 9, 2003).

Because Defendant is not accused of committing any criminal act outside the geographical boundaries of the United States, section 7 is irrelevant here. For the

reason that section 7 does not apply, the indictment was not required to recite the language.

Accordingly, the undersigned recommends to the District Judge that she reject Defendant's arguments in support of his contention that this Court lacks subject-matter or *in personam* jurisdiction over the crime and the person of Defendant.

***The Constitutionality of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("the Act"), 21 U.S.C. § 801 et seq. (addressing Defendant's argument I)***

Defendant attacks the constitutionality of the Act, arguing that it was outside Congress' authority under the Commerce and Necessary and Proper clauses of the Constitution. Article I, sec. 8, cl. 3 of the Constitution states, "The Congress shall have Power … To regulate commerce with foreign nations, and among the several states, and with the Indian tribes…." Article I, sec. 8, cl. 3 states: "The Congress shall have Power … To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." Case law shows that this argument is without merit.

The defendant in *United States v. Genao*, 79 F.3d 1333 (2d Cir. 1996), Robert Llin, Sr. ("Llin"), made a similar argument contesting the constitutionality of the Act. Llin argued:

> that in enacting the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "Controlled Substances Act"), of which 21 U.S.C. § 846 is a part, Congress exceeded its authority under the Commerce Clause, Article I, § 8 of the Constitution, thereby violating the Tenth Amendment which reserves to the states the powers not delegated to the United States.

*Id*. at 1335. Llin additionally argued that his conduct was solely intrastate, thus not subject to regulation by Congress. The Second Circuit wrote:

> Congress's findings and declarations with respect to its enactment of the Controlled Substances Act are codified at 21 U.S.C. § 801 which, in relevant part, provides as follows:
>
>> (3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because (A) after manufacture, many controlled substances are transported in interstate commerce, (B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and (C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.
>>
>> (4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.
>>
>> (5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.
>>
>> (6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.
>
> Because narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce, the actual effect that each drug conspiracy has on interstate commerce is constitutionally irrelevant.

*Id*. at 1335–36. The Second Circuit also rejected Llin's argument that the Supreme Court decision in *United States v. Lopez*, 514 U.S. 549 (1995), which struck down the Gun-Free Zones Act of 1990 as violative of the Commerce Clause. The Court of Appeals distinguished *Lopez*'s holding that carrying a gun in a school zone was not an economic activity, from the drug dealing by Llin, stating:

> In rendering its decision, the *Lopez* Court did not purport to overrule those cases that have upheld application of the Commerce Clause power to wholly intrastate activities, and we find no basis for extending the *Lopez* holding to the case before us. The Controlled Substances Act concerns an obviously economic activity. In addition, Congress has made specific findings that local narcotics activity has a substantial effect on interstate commerce. In contrast, the conduct that was criminalized in *Lopez* did not obviously concern economic activity, as the Court recognized.

*Id*. at 1337.

The Second Circuit's decision in *Genao* forecloses Defendant's arguments that Congress exceeded its constitutional authority in enacting the Act at issue here. Accordingly, the District Judge should reject Defendant's argument that the Act is unconstitutional.

### *The Lack of Signatures on the Indictment (addressing Defendant's argument A)*

Federal Rule of Criminal Procedure 7 states in relevant part: "The indictment … must be signed by an attorney for the government." Defendant has complained that the indictment here is defective because it lacks a signature of the U.S. Attorney and a signature of the foreman of the Grand Jury.

The U.S. Supreme Court addressed the question of whether an indictment needed the signature of the Grand Jury foreman with the endorsement, "a true bill,"

in *Frisbie v. United States*, 157 U.S. 160 (1895). It wrote that the endorsement and signature were "advisable," but fell short of stating they were mandatory. As recently as January this year, the district court in the District of Nevada relied on the holding in *Frisbie* to determine that the lack of an endorsement and Grand Jury foreman signature was not fatal to the indictment in *United States v. Bell*, No. 2:15-CR-54 JCM (CWH), 2020 WL 291838 (D. Nev. Jan. 21, 2020).

In any event, the original unredacted indictment, which is still sealed, contains both a signature by the U.S. Attorney and by the foreperson of the Grand Jury under the endorsement "A TRUE BILL." (Indictment, Mar. 19, 2020, ECF No. 9.) The signatures are reproduced here:

A TRUE BILL: [signature] FOREPERSON

BY: [signature]
JAMES P. KENNEDY, JR.
United States Attorney
EVERARDO A. RODRIGUEZ
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
100 State Street, Suite 500
Rochester, New York 14614
585/263-6760
everardo.rodriguez@usdoj.gov

***Defendant's Prior Defense Counsel Did Not File an Appeal of the Court's Detention Order***

Although not connected with Defendant's arguments about jurisdiction, he does raise a complaint that his prior counsel did not file with the District Judge a request for a review of this Court's May 4, 2020, Detention Order entered pursuant to the Bail Reform Act of 1984. The applicable statute states in relevant part that:

> If a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145. The wording of the statute does not contain any time limitation on the filing of the motion. Additionally, another section of the Bail Reform Act of 1984 provides that:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). Thus, Defendant has two avenues to explore for review of the Court's Detention Order. His complaint that his attorney did not file a motion for review does not require dismissal of the indictment.

## CONCLUSION

For the foregoing reasons, the undersigned recommends to the District Judge that she deny Defendant's two applications contesting jurisdiction and asking the Court to dismiss the indictment: Defendant's Letter Motion to Challenge Jurisdiction, filed on July 7, 2020, ECF No. 27, and his Motion to Challenge Jurisdiction, filed on July 13, 2020, ECF No. 31.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS**[10] to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[11]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

---

[10] **NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**: The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Wolford.

[11] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:   July 31, 2020
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge