UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

              v.

JOHN RIVERA-BANCHS,

              Defendant.

**DECISION AND ORDER**

6:20-cr-06046 EAW

## <u>BACKGROUND</u>

Pending before the Court are objections (Dkt. 66) filed by *pro se* defendant John Rivera-Banchs ("Defendant") to a Report and Recommendation of United States Magistrate Judge Mark W. Pedersen[1] (Dkt. 65). For the reasons set forth below, the objections are denied[2] and the Court accepts and adopts the Report and Recommendation in its entirety.

In the Report and Recommendation, Magistrate Judge Pedersen recommends that the Court deny Defendant's motion to suppress post-arrest statements to law enforcement because the government does not intend to introduce any such evidence at trial and has further indicated that it will provide Defendant with his post-arrest jail telephone calls; that the Court deny Defendant's motion to suppress evidence seized from his person incident

---

[1]    This Court referred all pretrial matters in the case to United States Magistrate Judge Mark W. Pedersen pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Dkt. 12).

[2]    Defendant has filed a notice of appeal from this Court's Decision and Order adopting Magistrate Judge Pedersen's recommendation to deny Defendant's motions to dismiss. (Dkt. 68). To the extent the notice of appeal has divested this Court of jurisdiction, this Decision and Order is issued pursuant to Fed. R. Crim. P. 37(a)(2).

to his arrest; that the Court deny Defendant's motion to suppress evidence seized from co-defendants upon their arrests because Defendant failed to establish standing to challenge the same; and that the Court deny Defendant's motion to suppress evidence seized pursuant to search and wiretap warrants because they were supported by probable cause and Defendant has failed to point out any deficiencies in the applications. (Dkt. 65).

Defendant challenges various aspects of the Report and Recommendation, as follows: (1) he complains that he submitted a 34-page "reply motion" to Magistrate Judge Pedersen in support of his challenges to the search warrants, but it was not placed on the docket (Dkt. 66 at 1-2); (2) he challenges the reliability of the confidential informant referenced in the affidavit in support of the search warrants (*id*. at 2); (3) he complains that law enforcement failed to use alternative procedures prior to obtaining the wiretap warrants (*id*. at 3); (4) he objects to the issuance of the Report and Recommendation three months after he initially filed his omnibus motion (*id*. at 3); and (5) he complains that his omnibus motion requested various relief that was not addressed in the Report and Recommendation (*id*. at 4). Defendant also objects to not being provided a preliminary hearing (*id*. at 11-12) and he raises the same jurisdictional challenge that was previously raised and rejected (*id*. at 14-16).

The government submitted a memorandum in opposition to Defendant's objections (Dkt. 73), and Defendant submitted a reply (Dkt. 79). In addition to the aforementioned Report and Recommendation, Defendant's objections, the government's responding memorandum, and Defendant's reply, the Court has also reviewed the underlying motion papers filed before Magistrate Judge Pedersen, as well as the audio transcripts of

- 2 -

proceedings before Magistrate Judge Pedersen on February 21, February 25, and March 26, 2020, and the written transcript of an appearance before Magistrate Judge Pedersen on September 11, 2020. (*See* Dkt. 3 (minute entry from 2/21/20 initial appearance); Dkt. 5 (minute entry from 2/25/20 status conference); Dkt. 10 (minute entry from 3/26/20 arraignment); Dkt. 37 (Defendant's omnibus motion); Dkt. 48 (government's response to omnibus motion); Dkt. 58 (Defendant's reply in support of omnibus motion); Dkt. 61 (Defendant's affidavit in support of his claims of standing); Dkt. 92 (9/11/2020 transcript)).

## ANALYSIS

### I.    Standard of Review

A district court reviews any specific objections to a report and recommendation on a dispositive issue, such as a motion to suppress, under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections to a report and recommendation "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

In contrast, any appeal from a non-dispositive decision by a magistrate judge is reviewed under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Feneziani*, No. 05-CR-290E, 2007

WL 1613630, at *1 (W.D.N.Y. June 1, 2007) (quoting *Garcia v. Teitler*, 443 F.3d 202, 211

(2d Cir. 2006)).   "This standard is highly deferential, imposes a heavy burden on the

objecting party, and only permits reversal where the magistrate judge abused his

discretion."   *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*,

954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (quotations omitted); *see also S.E.C. v.*

*Verdirarno*, 890 F. Supp. 2d 257, 266 (S.D.N.Y. 2011) ("The clearly erroneous standard is

highly deferential, and magistrate judges are afforded broad discretion in resolving non-

dispositive disputes. . . ." (quotation omitted)).

## II.    Motion to Suppress Search Warrants

The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S.

Const. amend. IV.   "To establish probable cause to search a residence, two factual

showings are necessary—first, that a crime was committed, and second, that there is

probable cause to believe that evidence of such crime is located at the residence."   *United*

*States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability

that contraband or evidence of a crime will be found in a particular place' and a federal

court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry."

*United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462

U.S. 213, 238 (1983)).   When reviewing the validity of a search warrant:

> the duty of [the] court . . . is simply to ensure that the magistrate had a
> substantial basis for concluding that probable cause existed.   A search

> warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant.

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (quotations, citations, and original alterations omitted); *see also Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("[A] reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate. . . ."). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236) (alteration in original). "[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant, and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (alteration in original) (citations omitted)).

Defendant seeks to suppress any evidence seized upon execution of search warrants issued for six separate premises ("Premises 1-6")[3] and a vehicle allegedly owned by

---

[3]    These properties are as follows: 61 Teralta Street, Rochester, New York (Premise 1); 45 Whittier Park, Rochester, New York (Premise 2); 478 Newbury Street, Rochester, New York (Premise 3); 64 Lang Street, Rochester, New York (Premise 4); Unit 226A, Rochester Central Storage (Premise 5); and 1408 North Street, Rochester, New York (Premise 6).  (*See* Dkt. 73-1 at 2).

Defendant's wife ("Vehicle 1"). According to Defendant's affidavit in support of standing, he resides at 61 Teralta Street (Premise 1) and he used Vehicle 1 as his "means of transportation". (Dkt. 61 at 2-3). Defendant also generally contends that he has the right to challenge "any property listed under J&L TransRealty Inc." ("J&L"), although he provides no specifics for those claims. (*Id.* at 2-3). The affidavit of DEA Special Agent Sabatino Smith, submitted in support of issuance of the search warrants, states that Premise 2 is vacant and owned by J&L, with utility records in the name of "John Banchs" (Dkt. 73-1 at ¶¶ 21, 37); that Premise 3 was quitclaimed by Defendant to J&L in October 2016, is the residence of Defendant's mother, and utility records are in the name of "John Banchs" (*id.* at ¶¶ 24, 49); that Premise 4 is owned by J&L and is the residence of Julia "Last Name Unknown," Defendant's girlfriend (*id.* at ¶ 56); that Premise 5 is a storage unit rented by Defendant (*id.* at ¶ 67); and that Premise 6 is the residence of co-defendant Richard Carrion ("Carrion") (*id.* at ¶ 71).

Although not addressed in the Report and Recommendation, the Court is not convinced that Defendant has established standing to challenge the searches of Premises 2 through 5. *See United States v. Lyle*, 919 F.3d 716, 727 (2d Cir. 2019) (An individual challenging a search under the Fourth Amendment "must demonstrate a subjective expectation of privacy in the place searched, and that expectation must be objectively reasonable."); *United States v. Thompson*, No. 1:18-CR-00126 EAW, 2020 WL 408354, at *5 (W.D.N.Y. Jan. 24, 2020) (property ownership does not alone establish standing, and other factors to be considered "include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that

place, whether he has demonstrated a subjective expectation of privacy, and whether he took precautions to maintain his privacy" (quoting *United States v. Cruz*, 475 F. Supp. 2d 250, 257-58 (W.D.N.Y. 2007)).  Nonetheless, the Court will assume without deciding that Defendant has standing to challenge the searches of Premises 2 through 5, and address the specifics of Defendant's challenges.  However, Defendant plainly has not established his standing to challenge the search of Premise 6—property purportedly resided in by Carrion and for which there is no evidence in the record that Defendant possessed any privacy interest.

The search warrants were issued by Magistrate Judge Pedersen based upon information set forth in Agent Smith's affidavit.  Agent Smith's affidavit described controlled buys and meetings regarding the purchase of cocaine from Defendant by a Confidential Source ("CS") at Premises 1, 2, and 3.  (*See* Dkt. 73-1 at ¶¶ 17-20 (July 2019 controlled buy at Premise 1); ¶ 21 (September 2019 controlled meeting at Premise 2); ¶¶ 22-23 (September 2019 controlled buy at Premise 1); ¶¶ 24-26 (November 2019 controlled buy at Premise 3); and ¶¶ 27-28 (December 2019 controlled buy at Premise 1)).  The affidavit also described two additional controlled purchases in January and February 2020, at another one of Defendant's rental properties, for which the government did not seek a search warrant.  (*Id*. at ¶ 29).  The affidavit further described intercepted telephone communications revealing that Defendant used Premise 2 to advance his drug dealing (*id*. at ¶¶ 39-45); that Defendant stored his Honda Accord at Premise 3 where his mother lived (*id*. at ¶¶ 49, 51); and that Defendant used Premise 4 where his girlfriend lived to store evidence related to his drug dealing (*id*. at ¶¶ 56-65).  The affidavit further documented

that Defendant communicated with Carrion about cocaine (*id.* at ¶¶ 72-76), and that Defendant travelled to Carrion's residence (Premise 6) to supply cocaine (*id.* at ¶¶ 43-45, 60-61). In addition, the affidavit established that Defendant rented storage unit 226A at Rochester Central Storage (*id.* at ¶¶ 67-70), and that Defendant drove Vehicle 1, a 2003 tan Chevrolet S-10 registered to Evelyn Banchs on a daily basis, including to Premises 2, 3, and 6 to further his drug trafficking activities (*id.* at ¶¶79-82). Finally, the affidavit sets forth the history of the investigation into Defendant's narcotics dealing and information regarding typical practices of drug dealers to hide their activities. (*Id.* at ¶¶ 7-16 & 31).

Defendant challenges the search warrants on the grounds that Agent Smith's affidavit was "'barebone', defective and lacks probable cause." (Dkt. 66 at 2). This contention is wholly without merit, as the affidavit was detailed and more than adequately established probable cause to believe that Defendant was involved in drug trafficking of cocaine, and that evidence of those crimes would be located at Premises 1-6 and Vehicle 1. To the extent that Defendant complains that his reply in further support of his motion to suppress was not considered by Magistrate Judge Pedersen (Dkt. 66 at 2), the Court disagrees that the record supports such a conclusion as Defendant specifically raised the issue about his reply during the oral argument before Magistrate Judge Pedersen on September 11, 2020 (Dkt. 92 at 41-44), Magistrate Judge Pedersen indicated that he would review the reply and if he could not locate it he would contact Defendant (*id.* at 43), and the reply was plainly filed on the docket prior to the issuance of the Report and Recommendation (*see* Dkt. 58 (reply); Dkt. 65 (Report and Recommendation)). In any event, this Court's review of the motion to suppress is *de novo*, and that review has included

Defendant's reply.  Based on its review of all of the relevant material in the record, the Court concludes that Magistrate Jude Pedersen had a substantial basis for concluding that probable cause existed to search Premises 1-6 and Vehicle 1.

Defendant also challenges the search warrants on the ground that the CS was not reliable.  "In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the 'totality of the circumstances' bearing upon its reliability."  *Smith*, 9 F.3d at 1012; *see also Gates*, 462 U.S. at 233-34 (describing evaluation of informant's information under totality of circumstances test).  Here, Defendant's claims also fail.  The affidavit sets forth background information of the CS, law enforcement's work with the CS, corroboration of the CS's information, and the evidence from the controlled buys.  (Dkt. 73-1 at ¶¶ 13-29).

Finally, to the extent Defendant seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), he has wholly failed to meet his burden for such a hearing.  Under *Franks*, to justify a full hearing regarding a search warrant's validity, a defendant must make "a substantial preliminary showing that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate's probable cause finding."  *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987) (quotation omitted).  To be entitled to a *Franks* hearing, a defendant's attack on material contained in the search warrant:

> must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171. Defendant has not even come close to meeting this high burden.[4]

Accordingly, Defendant's motion to suppress evidence seized pursuant to execution of the search warrants for Premises 1-6 and Vehicle 1 is denied.

## III.    Defendant's Arrest and Search Incident to Arrest

Defendant contends that he was "kidnapped at gun point by black uniform officers holding guns and military style rifles to his face" and that these individuals had no "arrest or search warrant at hand when they entered the premises and handcuffed" Defendant. (Dkt. 66 at 7). Defendant is apparently referring to his arrest on February 20, 2020, at 22 Lill Street in Rochester, New York, which occurred "shortly after he handed over a kilogram of cocaine to another person there." (Dkt. 73 at 4). The government attached a copy of the search warrant for 22 Lill Street to its response papers (Dkt. 73-2), and an executed arrest warrant has also been returned (Dkt. 6).

To the extent Defendant contends that there was insufficient probable cause to effectuate his arrest, any such claim is belied by the record in this case. To the extent

---

[4]     The government also argues that even if the search warrants were lacking probable cause in some respect, suppression is not warranted pursuant to *United States v. Leon*, 468 U.S. 897 (1984). (Dkt. 73 at 2-3). Because the Court has concluded that probable cause supported issuance of the search warrants, it need not and does not reach that issue.

Defendant challenges the search of his person incident to his arrest, his claims similarly fail.  *See United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017) ("The search-incident-to-arrest doctrine is an exception to the general requirement that an officer must obtain a judicial warrant supported by probable cause before conducting a search. . . .  It serves two interests: protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy.  These interests are not evaluated on a case-by-case basis, but are assumed to be present whenever an officer is justified in making an arrest." (citations and quotations omitted)).

## IV.   Motion to Suppress Statements

It is not entirely clear whether Defendant is challenging the Report and Recommendation that his motion to suppress statements be denied.  However, if he is, the Court agrees with the government that the government's representation that it will not use any post-arrest statements of Defendant to police, agents, or other government officials, renders any motion to suppress those statements moot.  Moreover, to the extent Defendant is seeking to challenge the use of his recorded jail calls or consensually recorded and monitored conversations between Defendant and the CS, he has not provided any basis for granting this relief, and therefore his request is denied.

## V.   Motion to Suppress Wiretap Evidence

The Report and Recommendation concluded that suppression of evidence obtained pursuant to any wiretap warrant was not warranted, although it noted that it was "broadly construing Defendant's omnibus motion to include any wiretap warrants, although he makes no direct mention of wiretap warrants in his motion papers."  (Dkt. 65 at 5 n.3).  The

issue arose during the oral argument before Magistrate Judge Pedersen on September 11, 2020, but it appears as though at that point Defendant may not have had access to at least some of the wiretap information.  (*See* Dkt. 92 at 19-20).  In his objections, Defendant argues that the wiretap warrants were unnecessary "because S.A. Smith in his own mind had created a big drug organization, when in fact, he had no co-conspirators/co-defendant(s) or drug supplier(s) to track and run after."  (Dkt. 66 at 13-14).  Defendant takes issue with whether the wiretap warrants were only sought after other investigative techniques failed or would be unlikely to succeed.  (*Id.* at 14).  In his reply, Defendant also appears to attack the affidavit submitted in support of the wiretap warrants on the ground that it was based on hearsay.  (Dkt. 79 at 9-13).  The government responded to the objections by attaching the affidavit of Agent Smith (Dkt. 73-3) and arguing that the affidavit "provides an exhaustive explanation of why other investigative techniques (including use of confidential informants, surveillance, undercover officers, search warrants and grand juries subpoenas and testimony) were insufficient to achieve the goals of the investigation" (Dkt. 73 at 9 (citing Dkt. 73-3 at ¶¶ 131-162)).

An application for electronic surveillance is authorized by 18 U.S.C. § 2518(3) if:

the judge determines on the basis of the facts submitted by the applicant that—

(a)     there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b)     there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

(c)     normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

> (d)     except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

With respect to the use of normal investigative procedures, the Second Circuit has explained:

> Section 2518 'is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'. . .  'The purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.'

*United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990) (citations and original alteration omitted), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010).   In other words, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance."   *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009).

Here, Agent Smith's affidavit plainly met the applicable standard.  Agent Smith details the information that has been learned through the use of confidential sources, but the limits of their knowledge as to the full scope and identity of the drug trafficking activities (Dkt. 73-3 at ¶¶ 136-141); the evidence uncovered through the use of surveillance (including pole cameras) but the limits of that tool and the need for electronic surveillance, described as "essential to the success of this investigation" (*id.* at ¶¶ 142-151); the limits of the use of toll records and pen register/trap and trace information for the telephone calls

placed over the target telephones (*id*. at ¶¶ 152); the downsides to executing search and arrest warrants at that point in time which, among other things, would alert the targets to the existence of the investigation and "prevent law enforcement from exposing the full nature and scope of the criminal activity and the identities of all the participants" (*id*. at ¶¶ 156-160); and the consideration of and limits of various other investigative techniques (*id*. at ¶¶ 153-155, 161-162).

Finally, to the extent Defendant attempts to raise a challenge to the probable cause determination or the reliance on hearsay information in Agent Smith's affidavit, there is no requirement that all of Agent Smith's information be within his own personal knowledge, and it is beyond reasonable dispute that the affidavit amply supported a finding of probable cause. *See United States v. Funderburk*, 492 F. Supp. 2d 223, 236-37 (W.D.N.Y. 2007) ("[I]t is well settled that the standard for assessing probable cause for an eavesdropping warrant is no different from that required for a search warrant. In determining whether probable cause for an eavesdropping warrant exists, the issuing officer need only make a practical, common sense decision whether, given the 'totality of the circumstances' set forth in the affidavit requesting such warrant, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that evidence of a crime will be obtained through the use of electronic surveillance." (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) and *United States v. Fury*, 554 F.2d 522, 530 (2d. Cir. 1977)).

Accordingly, to the extent Defendant seeks to suppress evidence from the wiretap warrants, the motion is denied.

## VI.   <u>Other Arguments Advanced by Defendant</u>

In his voluminous filings, Defendant raised several other issues, none of which contain any merit.  The Court briefly addresses some of Defendant's points, but to the extent not expressly addressed herein, the Court rejects Defendant's arguments for the reasons set forth in the Report and Recommendation (Dkt. 65), for the reasons set forth in the government's opposition papers (both to the omnibus motion and to the objections) (Dkt. 48; Dkt. 73), and for the reasons set forth by Magistrate Judge Pedersen on the record on September 11, 2020 (Dkt. 92), and in his Order filed on October 8, 2020 (Dkt. 64).

In terms of Defendant's complaints that his omnibus motion requested various forms of relief that were not addressed by Magistrate Judge Pedersen (Dkt. 66 at 4), Defendant's contentions appear incorrect.  Between the Order issued by Judge Pedersen on the non-dispositive issues raised in Defendant's motion (Dkt. 64), the Report and Recommendation currently pending before the Court (Dkt. 65), and the prior Report and Recommendation (Dkt. 42) that was adopted by this Court in its Decision and Order entered September 21, 2020 (Dkt. 59), it appears that all of the issues raised by Defendant have been addressed in one way or another.  Nonetheless, Defendant's papers are not a model of clarity, and therefore if there is a pretrial issue that Defendant is seeking to raise that has not been previously addressed by Magistrate Judge Pedersen or this Court, he may seek leave to file a motion addressing the issue, but Defendant is encouraged to be clear and concise in his filing and not to raise issues that have already been addressed.

Defendant also complains about the so-called bypassing of a preliminary hearing in this case.  (Dkt. 66 at 11).  In support of his argument in this regard, Defendant refers to

both the court transcripts from March 26, 2020, and September 11, 2020. (*Id*. at 12). However, both of those appearances occurred after the return of the indictment in this case, and thus are not relevant to any request for a preliminary hearing. *See* Fed. R. Crim. P. 5.1(a)(2) ("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless . . . the defendant is indicted. . . ."). Although not referenced by Defendant, the undersigned has also listened to the audio transcripts of the appearances on February 21, 2020, and February 25, 2020 (the only appearances held before return of the indictment), at which time Defendant was represented by Assistant Federal Public Defender Steven G. Slawinski.  At the February 21, 2020, appearance, Magistrate Judge Pedersen advised Defendant of his right to a preliminary hearing, and at both that appearance and the appearance on February 25, 2020, AFPD Slawinski confirmed on Defendant's behalf that he was not asking for a preliminary hearing at that time because he wanted to first review voluntary discovery.  Thus, there is no merit to Defendant's complaints about not receiving a preliminary hearing.

To the extent Defendant complains that Magistrate Judge Pedersen did not decide his omnibus motion, filed on July 20, 2020 (Dkt. 37), until October 8, 2020 (Dkt. 64; Dkt. 65), there is no basis for Defendant's complaints (*see* Dkt. 66 at 3-4).  The record reflects that the omnibus motion was filed July 20, 2020 (Dkt. 37); in accordance with the schedule set by Magistrate Judge Pedersen (Dkt. 38) the government filed its response in opposition on August 21, 2020 (Dkt. 48); oral argument was held before Magistrate Judge Pedersen on September 11, 2020 (Dkt. 55); and he issued his decisions within 30 days thereafter (Dkt. 64; Dkt. 65).  All of the time under the speedy trial clock was excluded once

Defendant filed his omnibus motion through Magistrate Judge Pedersen's decision pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H).

Finally, to the extent Defendant seeks to challenge the seizure of evidence from other defendants or property over which he has no privacy interest, he has no standing to challenge any such search and seizure, and thus his motion is denied.

## CONCLUSION

For the foregoing reasons, the Report and Recommendation (Dkt. 65) is adopted in its entirety, and Defendant's omnibus motion (Dkt. 37) and objections to the Report and Recommendation (Dkt. 66) are denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:   February 2, 2021
         Rochester, New York