UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-vs-

JOHN RIVERA-BANCHS,

Defendant.

REPORT AND RECOMMENDATION
and DECISION AND ORDER
20-CR-6046-EAW-MJP-1

## APPEARANCES

For the United States:

Everardo Rodriguez, A.U.S.A.
United States Attorney's Office
100 State Street, Fifth Floor
Rochester, NY 14614
(585) 263-6760, ext. 2250

For the Defendant:

John Rivera-Banchs *pro se*
No. 327904
Monroe County Jail
130 South Plymouth Avenue
Rochester, NY 14614

## REPORT AND RECOMMENDATION
## INTRODUCTION

**Pedersen, M.J.** This case is before the undersigned on a supplemental omnibus motion filed by *pro se* defendant John Rivera-Banchs (hereinafter "Defendant") pursuant to Federal Rules of Criminal Procedure 12(b) and 47, and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. (Not. of Mot., Aug. 26, 2021, ECF No. 171.) Defendant's motion seeks the following:

(1) Suppression of the search warrants;

(2) Suppression of confidential source testimony based on a violation of 18 U.S.C. § 201(c)(2);

(3) Suppression of evidence based on the reliability of the confidential informant;

(4) Suppression of the wiretap warrants and challenging DEA Special Agent Sabatino Smith's affidavit in support of the wiretap warrants;

(5) Suppression of evidence from the warrantless search of Target Telephone 1 in violation of the Fourth Amendment;

(6) Requesting a *Franks* hearing; and

(7) Seeking severance.

For the reasons set forth below, the undersigned recommends that the District Court deny those aspects of Defendant's motion listed in numbers (1) through (5), above. Further, the undersigned denies Defendant's request for a *Franks* hearing and that part of his motion seeking severance.

## PROCEDURAL BACKGROUND

This case began with a criminal complaint filed on February 20, 2020, (ECF No. 1) alleging Defendant violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, between about 2016 and 2020, by possessing, with the intent to distribute, and distributing, five kilograms or more of cocaine, a Schedule II controlled substance, and conspiring with others to do the same. On March 19, 2020, the Grand Jury indicted Defendant and co-defendant Richard Carrion on one count of narcotics conspiracy in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), all in violation of Title 21, United States Code, Section 846. (Sealed

Indict., ECF No. 8; Redacted Indict., Mar. 26, 2020, ECF No. 11.) On March 25, 2021, the Grand Jury issued a Superseding Indictment ("Indictment") against Defendant, Mr. Carrion, and Defendant's wife, Evelyn Banchs, in which it charged Defendant with 7 counts of distribution of cocaine in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C), and one count of conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i). (Indict. ECF No. 119.)

Defendant filed his original omnibus motion on July 20, 2020, (Def.'s Omnibus Mot., ECF No. 37), and the undersigned issued an Omnibus Order (ECF No. 64) and a Report and Recommendation regarding the motion on October 8, 2020, (R&R, ECF No. 65). The Honorable Elizabeth A. Wolford adopted the Report and Recommendation on February 2, 2021. (D&O, ECF No. 96.)

## STANDARD OF LAW

The Honorable Elizabeth A. Wolford referred this matter to the undersigned to address "[a]ll pre-trial matters . . . including all pre-trial matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. Section 636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and recommendation for disposition pursuant to Section 636(b)(1)(B). All procedural aspects of matters properly before the Magistrate Judge under this Order, including scheduling and the filing of briefs or other supporting material, shall be determined by the Magistrate Judge." (Text Order of Referral, ECF No. 12.)

## DISCUSSION

### *Findings of Fact Regarding Defendant's Motion Challenging the Search Warrants.*

Defendant seeks suppression of the search warrants on various grounds, including that DEA Special Agent Sabatino Smith's affidavit in support of the application for the search warrants contained false and/or incorrect information. (Def.'s Aff. at 26–34, Aug. 30, 2021, ECF No. 171; Def.'s Reply Aff. at 16–18, Oct. 12, 2021, ECF No. 181.) Defendant also seeks to suppress the search warrants on the basis that information regarding the Chevrolet S-10 contained in Agent Smith's affidavit (ECF No. 1) and the application for the search warrant (Smith's Search Warrant Appl., ECF No. 1 in case number 20-MJ-531-MJP) is incorrect, rendering the warrant for the vehicle defective. (Def.'s Aff. at 29, ECF No. 171.)

Specifically, Defendant asserts that Agent Smith's affidavit provides: "The automobile for which the warrant is sought is Rivera-Banchs [*sic*] vehicle, a 2003 tan Chevrolet S-10 bearing New York State Registration Number HJA-4438 with Vin [*sic*] number of 1GCCS14H438204867 (Vehicle 1)." (*Id.* at 29 (emphasis in original); *see also* Smith Aff. at ¶ 3, ECF No. 1.). Defendant contends that this information is incorrect because the vehicle belonged to his wife, Evelyn Banchs, and the vehicle is gray, not tan. (*Id.* at 29 & Ex. C.) According to the Certificate of Title, the above VIN number, 1GCCS14H438204867, is correct. (*Id.* at Ex. C.) Defendant asserts that Agent Smith later referred to a different VIN number for the vehicle in his affidavit (*id.* at 29) describing it as follows:

> **VEHICLE** 1 **is a** 2003 tan Chevrolet S-10 bearing New York State Registration number HJA-4438 with VIN number of 1GKFK668X7J267207, registered to Evelyn Banchs, using PO Box 17681, Rochester, New York 14617. The investigative team has determined through physical surveillance that RIVERA-BANCHS regularly operates this vehicle. Specifically, RIVERA-BANCHS has been observed operating this vehicle on numerous occasions during the investigation and **Vehicle 1** has been observed parked at **Premises 1 and 2** on a regular basis, the most recent occasion being February 16, 2020, for **Premise 2** and February 18, 2020) for **Premise 1.**

(Smith Aff. at 36–37, ¶ 82, ECF No. 1.)

In addition, Defendant indicates that Agent Smith's application for a search warrant in case number 20-MJ-531-MJP is inconsistent in that the first page lists two different addresses for the location of the Chevrolet S-10 and neither of them is correct. The description contained in the caption of the warrant application describing the vehicle to be searched reads as follows: A 2003 CHEVROLET S-10 BEARING NEW YORK REGISTRATION NUMBER HJA-4438 WITH VIN NUMBER 1GCCS14H438204867 (VEHICILE 1)3 [*sic*] Somerset Drive, Elmira, New York. (Smith's Search Warrant Appl. at 1, ECF No. 1 in case number 20-MJ-531-MJP.) Lower down on the same page a description of the vehicle reads as follows: A 2003 TAN CHEVROLET S-10 BEARING NEW YORK REGISTRATION NUMBER HJA-4438 WITH VIN NUMBER 1GCCS14H438204867 (Vehicle 1)at [*sic*] 23 Somerset Drive, Elmira, New York. (*Id.*) Defendant contends that the warrant is defective because the vehicle "is registered to a P.O. Box in Rochester NY and not in Elmira NY." (Def.'s Aff. at 29, ECF No. 171.)

Notably, and not mentioned by Defendant, page 9 of the application, labeled "Attachment A, Description of Vehicle 1," provides as follows: **VEHICLE** 1 is a tan

Chevrolet S-10 bearing New York State Registration number HJA-4438 with VIN number of 1GKFK668X7J267207, registered to Evelyn Banchs, using PO Box 17681, Rochester, New York 14617..[*sic*]. (Smith's Search Warrant Appl. at 9, ECF No. 1 in case number 20-MJ-531-MJP.)

Defendant has sought suppression of the search warrants in two prior motions. (Def.'s Omnibus Mot. at 6, ECF No. 37 and Def.'s Aff. in Support of Omnibus Mot., Oct. 1, 2020, ECF No. 61.) The undersigned discussed this issue in the Report and Recommendation and recommended that the District Court deny Defendant's suppression motion. (R&R at 5–6, ECF No. 65.) Thereafter, Judge Wolford adopted the undersigned's recommendation that Defendant's challenges to the search warrant be denied. (D&O at 4–9, ECF No. 96.) Judge Wolford specifically found that Agent Smith's affidavit "was detailed and more than adequately established probable cause to believe that Defendant was involved in drug trafficking of cocaine, and that evidence of those crimes would be located at Premises 1–6 and Vehicle 1." (*Id.* at 8.)

### Legal Conclusions Regarding Defendant's Motion Challenging the Search Warrants.

A false statement is material when it is "necessary to the finding of probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978) ), *cert. denied sub nom., Lillis v. Golino*, 505 U.S. 1221 (1992). "Under the so-called 'corrected affidavits doctrine' courts look to the hypothetical contents of a 'correct' application to determine whether a proper warrant application, based on existing facts known to the applicant, would still have been sufficient to support arguable probable cause to make the search as a matter of law."

*Rivera v. City of Rochester*, No. 09-CV-6621-FPG, 2015 WL 409812, at *4 (W.D.N.Y. Jan. 29, 2015). "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination[.]" *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000). "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *Id.* (quotations omitted). Further, it is insufficient for a plaintiff to allege that there were errors in the affidavit, as "misstatements or omissions caused by 'negligence or innocent mistake[s]'" do not establish falsity or reckless disregard. *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013), *cert. denied*, 573 U.S. 916 (2014); *Sanders v. City of Rochester*, 360 F. Supp. 3d 152, 162 (W.D.N.Y. 2019) ("Errors contained in a search warrant affidavit caused by mere negligence or innocent mistakes do not establish falsity or reckless disregard.").

The evidence cited by Defendant is insufficient to demonstrate that the search warrants were defective and thus not supported by probable cause. While paragraph 82 of Agent Smith's affidavit in support of the application for a search warrant regarding the Chevrolet S-10 does indeed contain an incorrect VIN number for the vehicle, Agent Smith refers to the correct VIN number in the caption and paragraph 3 of his affidavit. (Smith Aff. at 1, 2, 36–37, ECF No. 1; Def.'s Aff. at Ex. C, ECF No. 171.) If the incorrect VIN number was removed from the warrant application, the correct VIN number is still contained therein twice. Accordingly, this error does not

establish the falsity or reckless disregard needed to challenge a finding of probable cause, but instead amounts to an innocent mistake.

Similarly, with respect to Defendant's assertion that the warrant for the search of the Chevrolet S-10 in case number 20-MJ-531-MJP is defective because it references two addresses in Elmira, New York, the undersigned believes Defendant has fallen short of demonstrating that the address was material to a finding of probable cause. If the alleged incorrect addresses are removed from the affidavit it still contains the correct VIN number for the Chevrolet S-10, and Defendant does not contend that the registration number listed in the affidavit is incorrect. The undersigned would have found that probable cause existed for the issuance of a search warrant for the vehicle without the inclusion of the addresses.

With respect to Defendant's assertion that Agent Smith's affidavit in support of the search warrants contained false and/or incorrect information, Defendant has offered only speculation in support of this claim. Further, Judge Wolford has already determined that the affidavit contained ample information to support a finding of probable cause. For these reasons, the undersigned recommends that the District Court deny that part of Defendant's motion seeking to suppress the search warrants.

***Findings of Fact Regarding Defendant's Request for Suppression of Confidential Source Testimony Due to a Violation of 18 U.S.C. § 201(c)(2).***

Defendant "moves to suppress any testimony given by the 'CS' at a Grand Jury hearing and in any Federal District Court in violation of 18 U.S.C. § 201."[1] (Def.'s Aff.

---

[1] Defendant later clarifies that he is moving pursuant to 18 U.S.C. § 201(c)(2). (Def.'s Aff. at 36.)

at 37, ECF No. 171.) Defendant seeks this relief on the basis that "the CS was engaging in third party cooperation for the reduction of sentence for a federal inmate. Here, S.A. Smith and the Federal Prosecutor entered an 'agreement' by 'offering' and 'promising' a reduction of sentence (for a federal inmate) to the Confidential Source." (Def.'s Aff. at 34, ECF No. 171.) Defendant contends that "[f]or a government official to make 'offers' and 'promises' to a 'CS' (witness) in return for testimony is consider [sic] a crime pursuant to 18 USC § 201." (Id.; see also Def.'s Reply Aff. at 14, ECF No. 181.) Defendant asserts that Assistant United States Attorney ("AUSA") Everardo A. Rodriguez committed "the crime of bribery" by offering something of value in exchange for testimony. (Def.'s Aff. at 35.) It appears that Defendant makes the same claim against Agent Smith and "the CS." (Id. at 36, 37.) Defendant contends that suppression of the confidential source's testimony is the "appropriate remedy" for this violation. (Id. at 37.)

### Legal Conclusions Regarding Defendant's Request for Suppression of Confidential Source Testimony Due to a Violation of 18 U.S.C. § 201(c)(2).

Section 201(c)(2), also known as the "anti-gratuity statute" provides that "whoever ... directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court...shall be fined under this title or imprisoned for not more than two years, or both." 18 U.S.C. § 201(c)(2). It is well settled in the Second Circuit that 18 U.S.C. § 201(c)(2) does not apply to the United States or to any Assistant United States Attorney acting within his or her official capacity. United States v. McFadden, 689

Fed. App'x 76, 80 (2d Cir. 2017) (summary order), *cert. denied sub nom. Brown v. United States*, 138 S. Ct. 282 (2d Cir. 2017); *accord United States v. Stephenson*, 183 F.3d 110, 118 (2d Cir. 1999), *cert. denied sub nom. Stephenson v. United States*, 528 U.S. 1013 (1999).

With respect to any assertion that Agent Smith and/or "the CS" are liable under 18 U.S.C. § 201(c)(2), none of the cases cited by Defendant supports this proposition. Instead, this Court has previously rejected this type of claim. *United States v. Kaczowski*, 114 F. Supp. 2d 143, 155–56 (W.D.N.Y. 2000) (rejecting defendant's "motion to suppress all testimony from any witness who may have been offered anything of value, including a promise of leniency or reduced sentence" in response to an alleged violation of 18 U.S.C. § 201.)

Defendant contends that "the class of persons who can violate the statute is not limited [*sic*] 'whoever' completes the following elements commits a crime under 18 USC § 201(c)(2)." (Def.'s Aff. at 35.) However, "it is well established that when the personal pronoun whoever appears in a federal statute it should not be understood to refer to the government unless the statute expressly so provides." *United States v. Bidloff*, 82 F. Supp. 2d 86, 94 (W.D.N.Y. 2000). The statute at issue does not expressly provide that it applies to the government and, therefore, Defendant has not demonstrated that it applies to Agent Smith.

Based upon the forgoing, the undersigned recommends that the District Court deny that aspect of Defendant's motion seeking to suppress confidential source testimony pursuant to an alleged violation of 18 U.S.C. § 201(c)(2).

***Findings of Fact Regarding Defendant's Challenge to the Confidential Source's Reliability.***

In his reply affidavit, Defendant challenges the reliability of the confidential informant. (Def.'s Reply Aff. at 14, ECF No. 181.) The undersigned wrote a Report and Recommendation in which he recommended that the District Court deny Defendant's motion to suppress evidence seized pursuant to the wiretap and search warrants as they were supported by probable cause and Defendant did not identify any deficiencies in them. (R&R at 5–6, ECF No. 65.) Defendant filed objections to the undersigned's Report and Recommendation, including objecting to the undersigned's recommendation that the District Court deny Defendant's motion to suppress evidence seized pursuant on the basis that the confidential informant referred to in the affidavit submitted in support of the search warrant affidavit was not reliable. (Def.'s Objections to R&R at 1–2, ECF No. 66.) In a Decision and Order dated February 2, 2021, the Honorable Elizabeth A. Wolford accepted and adopted the undersigned's Report and Recommendation in its entirety. (D&O at 1, ECF No. 96.) Judge Wolford also rejected Defendant's challenge to the reliability of the confidential informant, specifically stating that the affidavit in support of the search warrant "sets forth the background information of the CS, law enforcement's work with the CS, corroboration of the CS's information, and the evidence from the controlled buys." (*Id.* at 9.)

***Legal Conclusions Regarding Defendant's Challenge to the Confidential Source's Reliability.***

Defendant's challenge to the reliability of the confidential informant has

already been fully addressed by Judge Wolford. Accordingly, the undersigned recommends that the District Court deny that aspect of Defendant's motion challenging the confidential source's reliability.

### Findings of Fact Regarding Defendant's Request to Suppress the Wiretaps.

In his initial omnibus motion, Defendant sought an "Order . . . controverting [*sic*] any search warrants issued or directed against the person or property of this Defendant . . . ." (Def.'s Omnibus Mot. at 6, ECF No. 37.) Defendant further sought "an order to determine if there was probable cause to arrest [*sic*] and search Defendant's property." (*Id.* at 7.) Because Defendant did not specify which warrant he was challenging in his initial omnibus motion, the undersigned construed Defendant's challenges to encompass the search *and wiretap* warrants. (R&R at 5–6, ECF No. 65.) In the Report and Recommendation, the undersigned recommended that the District Court deny Defendant's motion application to suppress the search and wiretap warrants because

> Defendant has not pointed to any defects in the search or wiretap warrants that he contends warrant suppression of evidence. The undersigned approved of search warrants executed in this case and at the time determined that the accompanying affidavits provided probable cause to believe a crime had been committed and evidence of that crime would be found in the places to be searched. The affidavit supporting the complaint and search warrants for several properties, including 61 Teralta Street and the Chevy S-10, consisted of 37 pages of detailed allegations supporting the searches of those two properties, and many others. (Smith Aff., Feb. 20, 2020, ECF No. 1 in 20-MJ-543-MJP.) Nothing in Defendant's motion papers points out any deficiency in that application, or the wiretap applications.

(*Id.*)

Judge Wolford more fully addressed Defendant's motion to suppress the wiretaps in her Decision and Order adopting the Report and Recommendation. (D&O at 11–14, ECF No. 96.) Specifically, Judge Wolford found that Agent Smith's affidavit in support of the application for the wiretaps met the standard for an application for electronic surveillance, including describing the limitations of the other investigative techniques utilized in the case, thus requiring electronic surveillance. (*Id.* at 13–14.) Judge Wolford denied Defendant's motion to suppress evidence from the wiretap warrants. (*Id.* at 14.) In doing so, Judge Wolford rejected Defendant's challenge regarding whether the wiretap warrants were supported by probable cause, and further rejected Defendant's assertion that Agent Smith's affidavit relied on hearsay information on the basis that there is no requirement that all information contained in his affidavit be based upon personal knowledge. (*Id.*)

Defendant now contends that he "brings forth this new motion to challenge several erroneous and false information/statements contained in Special Agent Sabatino Smith [*sic*] Wiretap (Dkt 73–3) & Search Warrant Affidavit (Dkt 1)." (Def's Aff. at 2, ECF No. 171.) Defendant explains that at the time he made his initial omnibus motion, he was not in possession of his "complete Discovery Packet," including "Discovery Cd's [*sic*]"[2] and that he did not have a laptop on which to view the CDs. (*Id.* at 2.)

Defendant also continues to challenge Agent Smith's affidavit on the ground that it contains "incorrect & false information" that misled Judge Wolford. (Def.'s Aff.

---

[2]  Defendant makes reference to six CDs and then later indicates the discovery was contained on 8 CDs and, then, 7 CDs. (Def.'s Aff. at 3, ¶¶ 16, 17 & 22, ¶ 75, ECF No. 171.)

at 3 & 4, ECF No. 171.) Defendant argues that the affidavit's lack of evidence—i.e.,
evidence showing Defendant with co-conspirators mentioned in Smith's affidavit or
demonstrating that Defendant is a member of a drug trafficking organization—
resulted in Agent Smith misleading Judge Wolford. (*Id.* 4–5.) In addition, Defendant
repeatedly argues that Agent Smith either fabricated information and/or utilized false
information in his affidavit. (*See, e.g.*, Def.'s Aff. at 15–18, 20; Def.'s Reply Aff. at 1–
7.)

Defendant also contends that Agent Smith "chang[ed] the wordings of a DEA 6
police report that he use [*sic*] to incorporate it in his Wiretap Affidavit, (Dkt 73–3) &
Search Warrant Affidavit. (Dkt. 1)." (Def.'s Aff. at 11, ECF No. 171.) Defendant
contends that Agent Smith's wiretap affidavit indicated that "[i]n July of 2019, in the
presence of your affiant CS–1 placed a <u>text message</u> to Rivera-Banchs on Target
Telephone 1 asking where 'to meet.'" (*Id.*) Defendant asserts that the DEA 6 Form
completed by Christopher R. Mahaffy indicated that on July 29, 2019, "...the CS
exchanged a series of <u>telecommunications</u> with Rivera-Banchs over cellphone number
585-415-0749 . . . ." (*Id.*) Finally, Defendant argues that the search warrant affidavit
completed by Agent Smith stated that "[i]n July of 2019, in my presence, the CS
<u>telephonically</u> contacted Rivera-Banchs, (Dkt 1 at 10 ¶ 19)." (*Id.*) Defendant argues
that the underlined words/phrases have a different meaning and shows that "[t]here
are two different versions of events that took place on July 2019." (Def.'s Aff. at 11.)

*Legal Conclusions Regarding Defendant's Request to Suppress the Wiretaps.*

In signing the application for the wiretap warrants on October 9, 2019, Judge Wolford necessarily found that there existed probable cause to support the warrants. (Smith Aff. at 87, ECF No. 73–3.) Then, upon Defendant's challenge to Agent Smith's affidavit and the wiretap warrants, Judge Wolford again analyzed the issue of probable cause and Agent Smith's affidavit and decided that "it is beyond reasonable dispute that the affidavit [in support of the application for the wiretap warrants] amply supported a finding of probable cause." (D&O at 14, ECF No. 96.) Judge Wolford also found that Agent Smith's affidavit met the standard for an application for electronic surveillance. (*Id.* at 13–14.) Nothing that Defendant has raised in his present motion alters this finding. The numerous arguments raised by Defendant attacking Agent Smith's affidavit generally amount to speculation and fail to demonstrate a lack of probable cause to support the issuance of the wiretap warrants.

Defendant raises an alleged discrepancy in the words/phrases utilized in Agent Smith's affidavits in support of the search and wiretaps warrants versus that included in the DEA 6 form signed by Christopher R. Mahaffy.[3] This Court, however, fails to

---

[3] Both Defendant and the government also address an alleged discrepancy between Agent Smith's affidavit and the DEA 6 form. Defendant alleges that Agent Smith's affidavit is inconsistent with the DEA 6 form because paragraph 48 of the affidavit says that "[s]urveillance officers were able to observe CS1 meeting with defendant" whereas the DEA 6 forms states "[a]t approximately 10:40 AM SA Mahaffy observed Rivera-Banchs wearing a black t-shirt in front of 61 Teralta Street conversing with two unknown males . . ." (Def.'s Aff. at 23.) Defendant alleges that there is nothing in the DEA 6 form that states Defendant met with the confidential source, which renders it inconsistent with paragraph 48 of Agent Smith's affidavit. (*Id.*) However, the government indicated that Agent Smith's affidavit refers to a different meeting than the one memorialized by Christopher Mahaffy, one taking place in "early September 2019" and the other taking place on July 26, 2019. (Gov't Resp. at 5, ECF No. 178.) Nevertheless, since neither party provided the Court with the DEA 6 form, the Court is unable to address this issue.

see the difference between a "text message," "exchanging telecommunications," and "telephonically contact[ing]" someone. This does not appear to demonstrate that Agent Smith engaged in any subterfuge, but instead supports the proposition that in July 2019, the CS communicated with Defendant on Target Telephone 1. The undersigned believes Defendant's speculation otherwise does not support a finding that there are two versions of the events that transpired in July 2019, as he contends.

Based upon the forgoing, the undersigned recommends that the District Judge deny that aspect of Defendant's motion seeking to suppress the wiretaps and challenging Agent Smith's affidavit on the basis that Judge Wolford has already decided these issues and because Defendant has put forth nothing but speculation and conclusory statements in support of his requested relief.

### Findings of Fact Regarding Defendant's Challenge to the Forensic Search of Target Telephone 1.

Defendant contends that after the initial seizure of Target Telephone 1 (585-415-0749), law enforcement was required to obtain an additional warrant to conduct a manual or forensic examination of the device. (Def.'s Aff. at 37; Def.'s Reply Aff. at 8–13[4], ECF No. 181.) Defendant also indicates that Target Telephone 1 is "owned and subscribed to Hector Cruz and not the defendant." (*Id.*; *see also* Def.'s Reply Aff. at 13, ECF No. 181 ("The Target Telephone 1 (owned and subscribed to Hector Cruz) was electronically intercepted without a Courts [*sic*] signed Search Warrant.")) Defendant

---

[4] References to page numbers for ECF No. 181 are to those automatically assigned when the document was filed on CM/ECF, and are located in the upper righthand corner of the document.

asserts that the "warrantless search of these cell phone(s) were [*sic*] unreasonable and violated the Fourth Amendment." (Def.'s Aff. at 38.)

### Legal Conclusions Regarding Defendant's Challenge to the Forensic Search of Target Telephone 1.

A defendant bears the burden of proving that he has a legitimate expectation of privacy in an object such that he can claim the protection of the Fourth Amendment in challenging the government's search of that object. *See Rawlings v. Kentucky,* 448 U.S. 98, 104–05 (1980) (the individual challenging a search bears the burden of demonstrating that he had a legitimate expectation of privacy in the object searched); *accord United States v. Watson,* 404 F.3d 163, 166 (2d Cir. 2005). Defendant admits in his affidavit that the rightful owner of Target Telephone 1 is Hector Cruz and not Defendant. For this reason, the undersigned recommends that the District Court find that Defendant lacks standing to challenge any manual or forensic search of Target Telephone 1. The undersigned further recommends that since Defendant failed to make this threshold showing, the District Court need not address that aspect of Defendant's motion seeking suppression.

### DECISION AND ORDER

Currently pending before this Court are Defendant's requests for a *Franks* hearing and for severance. Defendant seeks suppression on two grounds: (1) he "anticipates excessive delay while his co-defendants [*sic*] pretrial proceedings are resolved and will be 'unfairly prejudiced' which makes it difficult to participate in the preparation of his defense"; and (2) he asserts that he will suffer spillover prejudice

due to the volume of evidence that will be introduced against co-defendant Richard Carrion. (Def.'s Aff. at 40, ECF No. 171.)

## ANALYSIS

### Defendant's Motion for a Franks Hearing.

Defendant requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the truthfulness of the factual statements contained in Agent Smith's affidavit in support of the application for the wiretap warrants. (Def.'s Aff. at 26.) To be entitled to a *Franks* hearing, Defendant must make "a 'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quoting *Franks*, 438 U.S. at 155–56, 170–71). The Court's "focus is not on whether a mistake was made, but rather on the intention behind the mistake." *United States v. Markey,* 131 F.Supp.2d 316, 324 (D. Conn. 2001), *aff'd sub nom. United States v. Simpson*, 69 F. App'x 492 (2d Cir. 2003). To avoid fishing expeditions into affidavits that are otherwise presumed truthful, the Court in *Franks* held that to require an evidentiary hearing:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171.

Defendant has not met the standard to be entitled to a *Franks* hearing. While Defendant alleges that Agent Smith "knowingly made 'false' statements in his Wiretap Affidavit" and "maliciously" included false information in the affidavit, Defendant provides only conclusory statements in support of his allegations. (Def.'s Aff. at 20, 23, 24.) He has not provided evidence, besides his own speculation, that Agent Smith deliberately or with reckless disregard included any false or misleading information in his affidavit supporting the wiretap warrant application. For these reasons, the Court denies Defendant's request for a *Franks* hearing.

To the extent Defendant seeks a *Franks* hearing in connection with Agent Smith's affidavit in support of the application for the search warrants, this request has been denied twice. (*See* R&R, ECF No. 64; D&O at 9, ECF No. 96.) The undersigned once again denies this request on the same grounds as the previous denials.

### Defendant's Motion for Severance.

Defendant seeks severance on two grounds: (1) that he will suffer prejudice due to the excessive delay caused by waiting for the resolution of his co-defendants' pretrial proceedings while he is detained, which hampers his ability to participate in his defense; and (2) spillover prejudice based upon evidence that will be submitted at trial against his co-defendant, Richard Carrion. (Def.'s Aff. at 40–41, ECF No. 171.)

With respect to spillover prejudice, Defendant asserts that he will be prejudiced

if he is not severed from co-defendant Richard Carrion because Count 9[5] of the Indictment charges Mr. Carrion with possession of narcotics and the jury might assume that the charge is against Defendant. Count 9 of the Indictment is for "Possession of Cocaine With Intent to Distribute." (Indict. at 4–5, ECF No. 119.) Defendant contends that law enforcement searched his "person, personal residence, vehicle(s), J&L TransRealty Inc. rental properties, 'car batteries' etc. and anything under his name" and no drugs were found. (Def.'s Aff. at 40–41.)

In response, and in an apparent disconnect, the government contends that Count 10 of the Indictment charging Defendant and his co-defendant and wife, Evelyn Banchs, was properly joined because the money they allegedly laundered resulted from the drug crimes for which Defendant has been charged. (Gov't Resp. at 13, ECF No. 178.) However, the government also asserts that Defendant failed to satisfy his heavy burden of demonstrating that any alleged prejudice outweighs the benefits of a joint trial. (*Id.*) Finally, the government argues that Defendant has not satisfied his "extremely difficult burden" of demonstrating that trying him together with his co-defendants would deny him a constitutionally fair trial. (*Id.* at 18.)

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment ... or a consolidation for trial appears to prejudice a defendant or the government, the court may ... sever the defendants' trials[.]" Fed. R. Crim. P. 14(a). The decision to sever a trial pursuant to Rule 14 is

---

[5]  In his motion, Defendant incorrectly states that Count 8 of the Indictment is against Richard Carrion, but Count 8 is against Defendant for Distribution of Cocaine. (Indict. at 4–5, ECF No. 119.)

"committed to the sound discretion of the trial judge." *United States v. Delgado*, 972 F.3d 63, 81 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1114 (2021) (citation omitted).

The party requesting severance must demonstrate substantial prejudice: "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see also Delgado*, 972 F.3d at 81 (to demonstrate entitlement to severance the "defendant must show prejudice so severe as to amount to a denial of a constitutionally fair trial, or so severe that his conviction constituted a miscarriage of justice.") (citation omitted); *United States v. Cardascia*, 951 F.2d 474, 482 (1991) (in order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial"); *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988), *cert. denied*, 490 U.S. 1004 (1989) ("[T]he defendant must show that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice.'") (citations omitted). "That the defendant would have had a better chance of acquittal at a separate trial does not constitute substantial prejudice." *United States v. Carson*, 702 F.2d 351, 366 (2d Cir. 1983), *cert. denied*, 462 U.S. 1108 (1983).

A powerful presumption favors joint trials of defendants indicted together based upon the underlying policies of efficiency, avoiding inconsistent verdicts, providing a "more accurate assessment of relative culpability," avoiding victims and

witnesses having to testify repeatedly, and avoiding the random favoring of "the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987); *see also Cardascia*, 951 F.2d at 482 ("The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted."). Further, "[j]oint trials serve the interests of the government, the accused, and the public by eliminating the additional expense and repetition associated with successive prosecutions." *United States v. Thompson*, 504 F. Supp. 3d 160, 173 (W.D.N.Y. 2020) (Wolford, J.) (citing *United States v. Mc*Grath, 558 F.2d 1102, 1106 (2d Cir. 1977), *cert. denied*, 434 U.S. 1064 (1978) and *United States v. Lyles*, 593 F.2d 182, 191 (2d Cir. 1979), *cert. denied*, 440 U.S. 182 (1079)).

### a.  *Severance Based on Excessive Delay Due to Co-Defendants' Pretrial Proceedings While Defendant Remains Incarcerated.*

Defendant's entire argument in this respect is as follows:

> 97. Defendant seeks severance on the basis that he anticipate [*sic*] excessive delay while his co-defendants [*sic*] pretrial proceedings are resolved and will be "unfairly prejudiced" by delay because he is subject to "pretrial detention" which makes it difficult to participate in the preparation of his defense. That each defendants [*sic*] shall try their [*sic*] case separately.

(Def.'s Aff. at 40, ECF No. 171.) Defendant does not provide any further elaboration as to what pretrial proceedings he anticipates will cause delay. In fact, at this time neither of his co-defendants have any pending pretrial motions, whereas Defendant has filed many motions that have not yet been resolved. Regardless, Defendant's bare

allegations fail to rebut the powerful presumption of jointly trying those that are indicted together. Moreover, Defendant has not demonstrated that he will suffer prejudice so severe as to deny him a fair trial, or that any conviction would constitute a miscarriage of justice.

Additionally, the fact that Defendant will be incarcerated while he is awaiting trial "is not enough to overcome the strong interests in fairness, judicial economy and judicial efficiency, which would be best served by [a combined trial] of defendants who were indicted together and whose charges all arise out of the same set of operative facts." *United States v. Jones*, 143 F. Supp. 3d 78, 92 (W.D.N.Y. 2015) (citing *United States v. Lockwood*, No. 11-CR-085, 2012 WL 6204194, at *3 (W.D.N.Y. Dec. 12, 2012); *see also United States v. Astra Motor Cars*, 352 F. Supp. 2d 367, 370 (E.D.N.Y. 2005) ("Defendant has not demonstrated any reason as to why he is prejudiced by a joint trial, except to remind this Court that he is incarcerated awaiting trial. As incarceration alone is not a factor addressed by either Rule 8 or 14, this argument has no merit."); *United States v. Vega*, 309 F. Supp. 2d 609, 615 n. 5 (S.D.N.Y. 2004) (where the defendant's counsel requested that the court consider the difficulty of scheduling a multi-defendant trial in deciding a motion for a severance, noting that "the Supreme Court has instructed that severance motions should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence," and that "[i]f [the defendant] claims that the length of his pretrial

detention violates his right to due process, his remedy would be an application for pretrial release, not a severance motion.").

Defendant contends that he will be prejudiced by the anticipated excessive delay that will result from the resolution of his co-defendants' pretrial proceedings and that because he is detained he will be prevented from adequately participating in the preparation of his defense. (Def.'s Aff. at 40, ECF No. 171.) The Court construes this as another challenge to the undersigned's order detaining Defendant pending trial or resolution of this matter (Order of Detention, ECF No. 19), to which Defendant lodged objections and which the District Court affirmed (Def.'s Objections to Order of Detention, ECF No. 85). In addition, Defendant has a pending motion for reconsideration of his detention status, which is before Judge Wolford. (ECF No. 195.)

For these reasons, the Court denies this aspect of Defendant's motion for severance.

### b. Severance from Co-Defendant Richard Carrion Based on Spillover Prejudice.

Defendant asserts that he will suffer spillover prejudice if he is not severed from co-defendant Richard Carrion. Severance is not warranted in this case because Defendant has failed to satisfy his "heavy burden" that such relief is required. *United States v. Sotomayor,* 592 F.2d 1219, 1227 (2d Cir. 1979), *cert. denied sub nom., Crespo v. United States*, 442 U.S. 919 (1979) (finding that defendant seeking severance based upon spillover prejudice failed to meet his "heavy burden" for such relief.)

Further, Defendant has not demonstrated that the evidence presented against co-defendant Richard Carrion will substantially prejudice him if presented at a joint

trial. The Second Circuit has provided that "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008), *cert. denied*, 555 U.S. 1202 (2009) (citation omitted); *see also United States v. Chang An–Lo*, 851 F.2d 547, 557 (2d Cir. 1988), *cert. denied*, 488 U.S. 966 (1988) ("differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.") (citation omitted).

It is well established that limiting instructions provided to the jury can be sufficient to militate the risk of prejudice. *Zafiro*, 506 U.S. at 539; *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (even where risk of prejudice is high, "less drastic measures—such as limiting instructions—often suffice as an alternative to granting a Rule 14 severance motion"); *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (stating that this was not a case "in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his co-defendant that a severance is required to prevent unacceptable spillover prejudice ... especially ... since the district court explicitly instructed the jury to consider the defendants individually"); *United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997), *cert. denied*, 524 U.S. 905 (1998) (noting that spillover prejudice may be remedied through clear judicial instructions).

Defendant has not rebutted the powerful presumption in favor of jointly trying him with Richard Carrion. Importantly, Defendant and Richard Carrion have been charged with narcotics conspiracy meaning that the proof for the charge will

necessarily involve evidence against Richard Carrion regardless of whether Defendant is severed. Nevertheless, any potential prejudice to Defendant can be addressed with the less drastic measure of a curative instruction to the jury. Based on the forgoing, the undersigned determines that Defendant has failed to demonstrate that he will suffer prejudice if his case is not severed from that of co-defendant Richard Carrion and denies Defendant's motion for severance based on spillover prejudice.

## CONCLUSION

Based on the forgoing, the undersigned recommends that the District Court

(1) Deny that aspect of Defendant's motion seeking to suppress the search warrants;

(2) Deny that aspect of Defendant's motion seeking to suppress testimony from a confidential source based on an alleged violation of 18 U.S.C. § 201(c)(2);

(3) Deny that aspect of Defendant's motion seeking to suppress evidence based upon the alleged unreliability of the confidential informant;

(4) Deny that aspect of Defendant's motion seeking to suppress the wiretap warrants and challenging DEA Special Agent Sabatino Smith's affidavit in support of the wiretap warrants; and

(5) Deny that aspect of Defendant's motion seeking to suppress any evidence from the alleged warrantless search of Target Telephone 1 in violation of the Fourth Amendment.

Further, the undersigned denies Defendant's request for a *Franks* hearing and denies that part of Defendant's motion seeking severance.

Pursuant to 28 U.S.C. § 636(b)(1), the undersigned hereby

**ORDERS**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules of Civil Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:    December 22, 2021
          Rochester, New York

_MARK W. PEDERSEN_
MARK W. PEDERSEN
United States Magistrate Judge